**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Birdie Girl Golf LLC, | **)** | |
| | **)** | |
| Plaintiff, | **)** | Case No. 1:24-cv-9425 |
| | **)** | |
| v. | **)** | Judge Lewis J. Liman |
| | **)** | |
| Many Hats Enterprises LLC, | **)** | |
| | **)** | |
| Defendant. | **)** | |
| | **)** | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS**

URADNIK LAW FIRM PA
PO Box 7164
Lake Wales, Florida 33855
(612) 865-9449

HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
(212) 309-1000

*Attorneys For Defendant*
*Many Hats Enterprises LLC*

## I.    <u>The Complaint Should Be Dismissed for Improper Service</u>

Many Hats' motion to dismiss under Fed. R. Civ. Pro. 12(b)(5) for improper service should be granted.  The parties exchanged promises on December 11 and agreed, *inter alia*, that Birdie Girl would not serve the complaint until February 8, 2025, at the earliest.  Birdie Girl violated that agreement when the complaint was served on December 17, 2024.

Birdie Girl now attempts to rewrite the parties' email exchange and agreement.  There was never any requirement that Many Hats provide some sort of "confirmation" to BIRDIE GIRL.  Both parties performed under the agreement until Birdie Girl violated the agreement with its early service.  That improper, early service deprives this Court of personal jurisdiction over Many Hats, and dismissal pursuant to Fed. R. Civ. Pro. 12(b)(5) is appropriate.

## II.    <u>The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6)</u>

To be liable for cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), a "bad faith intent to profit" must be shown.  The statute expressly lists as a factor supporting a finding of bad faith intent to profit:

> **(V)**  the person's intent to divert consumers from the mark owner's online location <u>to a site</u> accessible under the domain name <u>that could harm the goodwill represented by the mark,</u> either for commercial gain or with the intent to tarnish or disparage  the mark, <u>by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;</u>

15 U.S.C. § 1125(d)(1)(B)(i)(V) (underline emphasis added).  The statute thus makes clear that <u>a mere intent to divert customers for commercial gain, without more, is insufficient to support a finding of bad faith intent to profit.</u>  There must be alleged here a diversion of customers to a site that could harm the goodwill represented by the BIRDIE GIRL mark by creating a likelihood of confusion.

There is no allegation in the complaint that the website <<birdiebabe.com>> was disparaging to Birdie Girl. There is no allegation in the complaint that operation of the website <<birdiebabe.com>> was an attempt to pass off Birdie Babe goods as Birdie Girl goods. There is no allegation in the complaint that there is any likelihood of confusion between the marks BIRDIE BABE and BIRDIE GIRL. There is no allegation in the complaint that the parties' respective websites were confusingly similar. In fact, the complaint fails to raise any objection at all to Many Hats' operation of the <<birdiebabe.com>> website vis-à-vis the goodwill associated with the BIRDIE GIRL mark. Simply put, the pleading of bad faith intent to profit is deficient.

A simply analogy to beverage service at a restaurant demonstrates the deficiency in pleading here. Consider the two customer scenarios:

| Step | WEBSITE SCENARIO | RESTAURANT SCENARIO |
|---|---|---|
| 1 | You want a BIRDIE GIRL product. | You want a COKE product. |
| 2 | You enter a website expecting BIRDIE GIRL products will be available. | You enter a restaurant expecting COKE products will be available. |
| 3 | The website offers only BIRDIE BABE products. | The restaurant offers only PEPSI products. |
| 4 | Stay and buy BIRDIE BABE products, or leave the website. | Stay and buy PEPSI products, or leave the restaurant. |

Web address redirection puts a customer in the wrong place vis-à-vis the customer's expectations. But simply causing misplaced expectations is not unlawful. If it were, then every time a COKE consumer asks for a COKE at a PEPSI-only restaurant, the restaurant would face liability. But that's not the law.

The main purpose of a trademark is to identify the source of a product, and to distinguish that product from products that come from other sources. Without an allegation of likelihood of confusion between the BIRDIE GIRL mark and the BIRDIE BABE mark, those two marks simply help consumers choose between products in the same way COKE and PEPSI help consumers

choose a beverage.  Redirection of a consumer to a website that is <u>not</u> confusingly similar to an expected website simply does not constitute "bad faith intent to profit."  Bad faith intent to profit exists where a likelihood of confusion is created.  ACPA, 15 U.S.C. 1125 (d)(1)(B)(i)(V).

Thus, Plaintiff simply has not sufficiently pled "bad faith intent to profit" where Plaintiff failed to plead a likelihood of confusion between BIRDIE GIRL and BIRDIE BABE marks. Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate.

III.    <u>**The Complaint Should Be Dismissed for Lack of Personal Jurisdiction**</u>

Birdie Girl now asserts personal jurisdiction under CPLR § 302(a)(1) and CPLR § 302(a)(3)(ii).  But the requirements of New York's long arm statute are not met because (i) no claim arose from Many Hats' actions in New York, and (ii) no tortious act was committed by Many Hats outside New York.

To establish personal jurisdiction under CPLR § 302(a)(1), the claim asserted must arise from Many Hats' business activity in New York.  *Eades v. Kennedy, PC Law Offices*, 799 F. 3d 161, 168 (2d Cir. 2015).  To establish personal jurisdiction under CPLR § 302(a)(3)(ii), the cause of action must arise from a tortious act committed outside New York.  *LaMarca v. Pak-Mor Mfg. Co.,* 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304 (N.Y. 2000).  Here, neither requirement is met.

Many Hats only business activity in New York was operating the website <<birdiebabe.com>>, which is accessible in New York and throughout the United States.  Outside of New York, Many Hats' redirected to <<birdiebabe.com>> the web addresses "birdiegirl.com" and "birdiegirlgolf.net."  There was never a website operated for either web address; entry of the web addresses took consumers to the <<birdiebabe.com>> website.

There is no allegation in the complaint that the website <<birdiebabe.com>> was disparaging to Birdie Girl.  There is no allegation in the complaint that operation of the website

<<birdiebabe.com>> was an attempt to pass off Birdie Babe goods as Birdie Girl goods. There is no allegation in the complaint that there is any likelihood of confusion between the marks BIRDIE BABE and BIRDIE GIRL. There is no allegation in the complaint that the parties' respective websites were confusingly similar. In fact, the complaint fails to raise any legal objection to Many Hats' operation of the <<birdiebabe.com>> website.

Thus, it cannot be said that the claim here of cybersquatting arises from Many Hats' conduct in New York, which Birdie Girl in no way finds legally objectionable. Accordingly, the requirements under CPLR § 302(a)(1) simply are not met.

Similarly, the requirements under CPLR § 302(a)(3)(ii) also are not met. The complaint alleges nothing more than simple web address redirection that occurs outside of New York. Web address redirection, without more, is not a tortious act. To be tortious, the web address redirection must be coupled with something that harms Birdie Girl's goodwill, e.g., disparagement, passing off, or a likelihood of confusion. See Section II above. Thus, because the cybersquatting claim here does not arise from a tortious act committed outside New York, the requirements of CPLR § 302(a)(3)(ii) also are not met.

In sum, because the requirements of New York's long arm statute are not met, the motion to dismiss under Fed. R. Civ. P. 12(b)(2) should be granted.

### IV.  <u>Conclusion</u>

For the foregoing reasons and the reasons set forth in Many Hats' opening brief, the Complaint should be dismissed.

Dated: <u>January 23, 2025</u>

Respectfully Submitted,

/s/ *Joseph A Uradnik*

Joseph A. Uradnik
URADNIK LAW FIRM PA
PO Box 7164
Lake Wales, Florida 33855
Tel.: (612) 865-9449
Fax: (763) 322-9797
Email: joe@iplawspot.com

Armin Ghiam
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 309-1000
Fax: (212) 309-1100
Email: aghiam@HuntonAK.com

*Attorneys For Defendant*
*Many Hats Enterprises LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

has been duly served by emailing a copy to:

>Matthew D. Asbell
>Chintan A. Desai
>Lippes Mathias LLP
>420 Lexington Avenue, Suite 2005
>New York, NY 10170
>masbell@lippes.com
>cdesai@lippes.com
>
>Attorneys for Plaintiff

on January 23, 2025.

.                                                        /s/*Joseph A. Uradnik*
                                                        Joseph A. Uradnik
                                                        URADNIK LAW FIRM PA